FILED

2009 Mar-17  PM 04:26
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### EASTERN DIVISION

| | | |
|---|---|---|
| ALTION MAXINE WALKER, | ] | |
| | ] | |
| Petitioner, | ] | |
| | ] | |
| vs. | ] | CV-06-LSC-RRA-0537-E |
| | ] | |
| THE ATTORNEY GENERAL | ] | |
| FOR THE STATE OF ALABAMA, et al., | ] | |
| | ] | |
| Respondents. | ] | |

## MEMORANDUM OPINION

This is a petition for a writ of habeas corpus brought by a person in custody under a judgment of a court of the State of Alabama.  28 U.S.C. § 2254.  The petitioner, Altion Maxine Walker, was indicted in June, 1988, by a Talladega County grand jury, for the capital offense of murder for hire.[1] She was initially tried on the charge in November, 1988, found guilty, and sentenced to death.  On appeal, the conviction was reversed due to a *Batson* violation.  *Walker v. State*, 611 So. 2d 1133 (Ala. Crim. App. 1992).  In November, 2001, the state announced that it would not seek the death penalty against Walker upon retrial.  In April, 2002, Walker was retried on the capital offense of murder for hire.  She was found guilty of the lesser included offense of murder, and she was sentenced to life imprisonment.

---

[1] The indictment charged that Walker

> did intentionally cause the death of William Clarence Berry by shooting him with a shotgun and a pistol for hire, to-wit: that [Walker] hired Mac O'Neal Lawhorn and James Charles Lawhorn to kill William Clarence Berry for One Hundred Dollars ($100.00) in violation of § 13A-5-40(a)(7) of the Code of Alabama.

The victim was Walker's boyfriend.  The shooters are Walker's nephews.

The Alabama Court of Criminal Appeals affirmed Walker's conviction in a memorandum opinion released on April 23, 2004. The Alabama Court of Criminal Appeals denied Walker's application for rehearing on June 11, 2004, and the Alabama Supreme Court denied the petition for a writ of certiorari on August 13, 2004. The United States Supreme Court denied Walker's petition for a writ of certiorari on March 21, 2005. *Walker v. Alabama*, 544 U.S. 925 (2005).

Walker, through counsel, has now filed a petition for a writ of habeas corpus in this court. In support of her petition, Walker claims that:

1. the trial court excluded her battered women's syndrome defense, in violation of her Fifth, Sixth, and Fourteenth Amendment rights;

2. she was prevented from rebutting the state's case on the element of intent in violation of her rights to due process and to present evidence and witnesses on her behalf;

3. there was gender discrimination in the selection of the grand jury foreperson, in violation of the Sixth and Fourteenth Amendments;

4. the indictment was fatally tainted by the fact that the foreperson gave evidence against Walker in the grand jury proceedings and by evidence of a lack of impartiality on the part of the foreperson;

5. the trial court tampered with evidence in a manner prejudicial to the truth and to Walker's right to a fair trial;

6. the prosecution introduced statements taken from Walker in violation of her Fifth, Sixth, and Fourteenth Amendment rights;

7. the jury instructions were fatally flawed in a number of ways, in violation of Walker's Sixth and Fourteenth Amendment rights; and

8. the prosecutor committed prejudicial misconduct by commenting on the very evidence Walker was not permitted to present.

In response to the court's order to show cause, the respondents have filed an answer in which they assert that the petition is due to be dismissed. The parties were advised that the respondents'

answer would be treated as a motion for summary dismissal pursuant to Rule 8(a) of the Rules

Governing Section 2254 Cases.  In response, Walker has filed a traverse.


## CLAIM 1

### The Trial Court Excluded Walker's Battered Women's Syndrome Defense, In Violation of Her Fifth, Sixth, and Fourteenth Amendment Rights

Walker maintains that the trial court erred in refusing to allow her to introduce evidence of

battered women's syndrome, in support of her position that she killed the victim in self-defense.

When Walker raised this claim on direct appeal, the Alabama Court of Criminal Appeals found it

to be without merit.  Because Walker filed this petition after the enactment of the Antiterrorism and

Effective Death Penalty Act of 1996 (AEDPA), amending § 2254, these claims must be evaluated

according to the standards as amended by the Act.  *Lindh v. Murphy*, 117 S. Ct. 2059, 2063 (1997).

Amended § 2254(d) states:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Thus, the petitioner can obtain relief only if she can establish that the Alabama Supreme Court's

adjudication of the claims "resulted in a decision that was contrary to, or involved an unreasonable

application of, clearly established Federal law, as determined by the Supreme Court" or "resulted

in a decision that was based on an unreasonable determination of the facts in light of the evidence

presented in the State court proceeding."  28 U.S.C. § 2254(d)(1)and (2).  *See Neelley v. Nagle*, 138 F.3d 917 (11th Cir. 1998), *cert. denied*, 119 S. Ct. 811 (1999); *Schlager v. Washington*, 113 F.3d 763, 768 (7th Cir. 1997); *Hodges v. Hawes*, 955 F. Supp. 958, 964 (N.D. Ill. 1997).

When Walker raised this claim on direct appeal, the Alabama Court of Criminal Appeals found as follows:

> In her second issue, Walker contends that the trial court erred when it declined to allow her to present testimony on bettered women's syndrome to show that, because Walker was a battered woman, she was in constant fear that she would be abused; that she acted in self defense on March 32, 1988; and that, while she just wanted the abuse to stop, she did not intend for Berry to be killed.

> However, as this Court determined in Part I, Walker was not entitled to claim as a defense to Berry's murder that she was acting in self defense.  Consequently, the trial court did not err when it declined to allow Walker to present testimony on battered women's syndrome as it related to her self-defense claim.

> The State points out in its brief that although Walker was not allowed to present testimony on battered women's syndrome, as it related to her self-defense claim, she was allowed to present evidence to the jury on battered women's syndrome as it related to her claim regarding the voluntariness of her statement. Specifically, we note that her expert was allowed to testify to the following: that Walker had previously suffered abuse at the hands of Berry and other men in her life; that in the three days prior to March 31, 1988, there was an escalation of violence and death threats; that "living in a battered relationship" can be compared to "being in a war zone" or "being in a hostage situation"(R. 1056-57); that "a battered woman like [Walker]" would feel that there was not "any escape" from "the abusive relationship (R. 1056-57); and that if Walker learned on Thursday morning that Berry was parked on the side of the road near her house, "she would have been very fearful in believing that he was lying in wait for her."  (R. 1065).  Thus, the jury was made aware that Walker suffered from battered women's syndrome, but, as we determined in Part I, she was not entitled to claim, under the facts of this case, that she acted in self defense.

Alabama Court of Criminal Appeals' opinion on direct appeal, Exhibit D to Respondents' *Answer*, Court Document 9, at 26 - 27.

4

In denying Walker's claim that the trial court erred in not allowing her to present evidence that she was acting in self defense, the Alabama Court of Criminal Appeals found, in Part I of its opinion, that:

> under the facts of this case, Walker was not entitled to pursue a claim of self defense because, although the evidence showed that Berry had been frequently aggressive and abusive toward Walker, the evidence also showed that it was Walker who was the initial aggressor on March 31, 1988 - - Walker lured Berry to an isolated area after she had helped to plan and to carry out the events that ultimately lead to Berry's death.

> Section 13A-3-23(a), Ala. Code 1975, provides: "A person is justified in using physical force upon another person in order to defend himself or a third person from what he reasonably believes to be the use or imminent use of unlawful physical force by that other person, and he may use a degree of force which he reasonably believes to be necessary for the purpose." However, § 13A-3-23(c), Ala. Code 1975, provides:

>> (c) Notwithstanding the provisions of subsection (a), a person is not justified in using physical force if:

>> . . .

>> (2) He [or she] was the initial aggressor, except that his or her use of physical force upon another person under the circumstances is justifiable if he or she withdraws from the encounter and effectively communicates to the other person his or her intent to do so, but the latter person nevertheless continues or threatens the use of unlawful physical force.

(Emphasis added.)  The Commentary to § 13A-3-23 states:

> Subdivisions (c)(1) and (c)(2) continue the policy that one who claims justification in the use of force must not have brought on the necessity of using it; he must have been entirely free from fault. *Shack v. State*, 236 Ala. 667, 184 So. 688 (1938).  The usual exception to this requirement is recognized: the initial aggressor may "effectively" withdraw and be restored to his position of defense while the erstwhile victim assumes the role of aggressor.

5

. . .

As previously noted, the evidence presented at trial revealed the following: Charles told Walker that he could use his fists to make Berry stay away from her; that Walker told Charles that would not do any good because, she said, Kilgore had already "whooped" Berry and Berry still did not stay away from her (R. 473); and that Charles told her that it would not be a problem for him to kill Berry. Walker provided the guns that were used in the shooting. When Charles asked her if she could get Berry to an isolated place, she told him that would not be a problem - - she would ask Berry "to meet [her] at [their] regular place." (R. 479) Walker told Charles and Mac she would need to take them to this area and drop them off before she went and found Berry because, she said, Berry would not come with her if he knew Charles and Mac were along. She took Charles and Mac out to this isolated area and left them there with the weapons. She then returned to town, found Berry, and lured him to this isolated area. After Berry left Walker's truck and began running up the road, Walker followed him in her truck with Charles and Mac laying [sic] down in the bed of the truck. When she caught up with Berry, Walker stopped the truck and Charles and Mac "raised up" and began shooting. (R. 486)

Clearly, there was evidence presented at trial which demonstrated that Walker was the initial aggressor on March 31, 1988 - - she helped to plan this sequence of events and her actions on this date set in motion a chain of events that culminated in Berry's death - - she found Berry and lured him to this isolated spot so that her nephews could shoot him. After Berry left Walker's truck and began to run up the road, Walker was the one who drove her truck - - with her nephews laying [sic] down in the back of the truck - - in the direction that Berry had run and she was the one who stopped the truck after she found Berry walking on the side of the road so that her nephews would have an opportunity to shoot an unarmed Berry. Although there was evidence presented that Berry had been frequently aggressive and abusive toward Walker in the past, there was no evidence presented at trial that on the day that Berry was killed that he was armed or that this shooting was provoked by, or in response to, Berry verbally threatening or physically assaulting Walker while they were either en route to or at the isolated spot where Berry was killed.

Thus, under the facts of this case, Walker was not entitled to use physical force against Berry on the day that he was killed because she was the initial aggressor on that day - - her actions and conduct on that day clearly demonstrated "a willingness to enter into combat." *Shack*, 236 Ala. at 668, 184 So. at 689. Consequently, Walker "cannot invoke the doctrine of self-defense" in this case because she "was not free from fault" on March 31, 1988. *Shack*, 236 Ala. at 668, 184 So. at 689. Furthermore, the only reasonable inference that could be drawn from the evidence was that the danger, or the apparent danger, posed by Berry was prospective, and not immediate at the time the killing occurred. The trial court

6

properly refused to charge the jury on self defense.  *King*, 478 So. 2d 318; *Raines*, 455 So. 2d 986.  Consequently, we find no error on the part of the trial court with respect to this issue.

Alabama Court of Criminal Appeals' opinion on direct appeal, Exhibit D to Respondents' *Answer*, Court Document 9, at 16 - 26.

Walker maintains that in finding that she "was the initial aggressor on March 31, 1988," that she was not "free from fault," and that any danger to her was not "immediate," the court "neither considered on its own nor let the jury consider the key fact that [she] was a battered woman whose affliction, as the experts understand it, would have shaped her thoughts and actions at the time of the killing [for] which she was accused."  *Petition* at 13.  Walker argues that:

> In so holding, the Alabama court unreasonably applied United States Supreme Court precedent on a defendant's Sixth Amendment right to present a defense.  The Supreme Court in *Washington v. Texas*, 388 U.S. 14, 19 (1967) defined the right to present a defense as  "the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies."  This right derives not only from the Sixth Amendment but also from the Fourteenth Amendment's "right to be heard."  *Crane v. Kentucky*, 476 U.S. 683, 690 (1986); *see also id.* at 690-691 (defendant has right to have prosecution's case "encounter and 'survive the crucible of meaningful adversarial testing.'" (*quoting United States v. Cronic*, 466 U.S. 648, 656 (1984)).

> The  Alabama Court of Criminal Appeals failed to apply these basic rules when it rubber stamped the prosecution's version of events; to the extent that it could be said to have recognized Mrs. Walker's right to present her defense, it unreasonably applied these precedents to the facts of her case when it upheld the exclusion of her evidence.  28 U.S.C. § 2254(d).

> Indeed, while the prosecution insisted throughout that Mrs. Walker "hired" her nephews to kill, the jury *rejected* that contention outright – even without hearing Mrs. Walker's full defense or being able to give effect to what it did hear through appropriate instructions.  The State of Alabama's refusal to allow her to present a defense requires issuance of the habeas writ.

*Petition* at 14-15.

Walker contends that *Washington v. Texas*, 388 U.S. 14, 19 (1967) and *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) establish her right to present a defense, and that the state court's decision is an "unreasonable application" of the law in these cases. Although these cases do state in general terms, that a defendant has the right to present a defense, Walker must identify a Supreme Court case addressing a situation similar to hers. *See Callahan v. Campbell*, 427 F.3d 897, 930 (11th Cir. 2005). Walker has not identified a Supreme Court case with an issue similar to hers.[2] Walker provides no support, Supreme Court or otherwise, for the proposition that the Fifth, Sixth, or Fourteenth Amendment gave her a right, considering the circumstances of the murder, to introduce evidence of self-defense, in support of her position that she killed the victim in self-defense because she was a victim of battered women's syndrome. Accordingly, the state court's decision on this issue was not contrary to or an unreasonable application of Supreme Court precedent.

In her traverse, Walker also argues that "[a]lthough not addressed in the state's response, this [c]ourt is also empowered to grant relief under § 2254(d)(2). This provision of the habeas law recognizes a need for relief where the state court decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Walker correctly points out that the respondents did not address this claim in their answer. However, she failed to mention that she did not raise this claim in her petition, so there was no reason for the respondents to address the claim in their answer. Walker was clearly advised in the court's June 30, 2006 order informing her of her right to file a traverse, that her "claims will be determined **only**

---

[2] Neither *Washington*, nor *Crane* involved a defendant's attempt to establish a defense of self defense. In *Washington*, the defendant was not allowed to call a particular witness because the witness had been convicted as a participant in the same crime. 388 U.S. at 16-17. In *Crane*, the defendant was not allowed to introduce any evidence about the duration of his interrogation or the individuals who were in attendance. 106 S. Ct. at 2144.

**from the allegations made in [the] petition**.  New allegations made in a traverse or in any other document will not be considered."  Because this claim was not included in Walker's petition, it is not properly before the court and will not be considered.[3]  This claim is due to be dismissed.

## CLAIM 2

### Walker Was Prevented from Rebutting the State's Case on the Element of Intent in Violation of Her Rights to Due Process And to Present Evidence and Witnesses on Her Behalf

Walker claims that "[s]eparate and distinct from the question of whether she could affirmatively prove self defense, [she] had a right to rebut the state's case on the element of intent," but the "trial court made this impossible."  *Petition* at 15.  She adds that "although the court gave the jurors a manslaughter instruction at petitioner's request, its evidentiary rulings deprived them of the evidence that would have negated intent and led to a manslaughter verdict."  *Id*.  "Mrs. Walker wanted to show the jury that she did not intend for Mr. Berry to be killed."  *Id.*  She argues that "the trial court's failure to allow evidence on lack of intent was prejudicial error," in violation of *Chambers v. Mississippi*, 410 U.S. 284, 294 (1973) and *In re Winship*, 397 U.S. 358, 364 (1970).  *Id*. at 17.

Prior to seeking relief in federal court from a state court conviction and sentence, a habeas petitioner is first required to present his federal claims to the state court by exhausting all of the state's available procedures.  The purpose of this requirement is to ensure that state courts are afforded the first opportunity to correct federal questions affecting the validity of state court convictions.  As explained by the Eleventh Circuit:

---

[3]  The court notes that even if the claim could be considered, it is clearly without merit.

In general, a federal court may not grant habeas corpus relief to a state prisoner who has not exhausted his available state remedies.   28 U.S.C. § 2254(b)(1)(A) ("An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State. . . ."). "When the process of direct review . . . comes to an end, a presumption of finality and legality attaches to the conviction. . . . The role of federal habeas proceedings, while important in assuring that constitutional rights are observed, is secondary and limited.   Federal courts are not forums in which to relitigate state trials." *Smith v. Newsome*, 876 F.2d 1461, 1463 (11th Cir. 1989) (*quoting Barefoot v. Estelle*, 463 U.S. 880, 887 (1983)).

Exhaustion of state remedies requires that the state prisoner "fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (citing *Picard v. Connor*, 404 U.S. 270, 275-76 (1971) (internal quotation marks omitted).   The Supreme Court has written these words:

> [T]hat the federal claim must be fairly presented to the state courts . . . . it is not sufficient merely that the federal habeas applicant has been through the state courts. . . .   Only if the state courts have had the first opportunity to hear the claim sought to be vindicated in a federal habeas proceeding does it make sense to speak of the exhaustion of state remedies.

*Picard*, 404 U.S. at 275, 92 S. Ct. at 512.  *See also Duncan*, 513 U.S. at 365, 115 S. Ct. at 888 ("Respondent did not apprise the state court of his claim that the evidentiary ruling of which he complained was not only a violation of state law, but denied him the due process of law guaranteed by the Fourteenth Amendment.").

Thus, to exhaust state remedies fully the petitioner must make the state court aware that the claims asserted present federal constitutional issues.   "It is not enough that all the facts necessary to support the federal claim were before the state courts or that a somewhat similar state-law claim was made." *Anderson v. Harless*, 459 U.S. 4, 5-6, 103 S. Ct. 276, 277, 74 L. Ed. 2d 3 (1982) (citations omitted).

*Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998).

On direct appeal, Walker raised the claim regarding intent as part of her second claim on

appeal, that the "trial court's failure to allow her to present testimony on battered women's syndrome

or to offer critical evidence about the victim's threats on her life deprived her of the ability to establish motive, prove lack or intent, or otherwise receive a fair trial." *Walker's Brief on Direct Appeal*, Court Document 9-2, at 47.  However, as the respondents point out, the claim was clearly not presented as a federal constitutional issue in her brief on appeal.  *Id.* at 47 - 50.  In her traverse, Walker argues that the claim is exhausted because:

> In her Petition for Writ of Certiorari to the Alabama Court of Criminal Appeals, at 6, Mrs. Walker argued that she had a right to rebut the state's case on intent and to hold the state to its burden of proving every element of the offense beyond a reasonable doubt.  In support of her claim, she cited to *In re Winship*, 397 U.S. 358, 364 (1970) and another federal case on point.   In the brief accompanying the petition, she repeated the supporting case; cited to other federal constitutional law decisions, and relied expressly on the Fifth, Sixth, and Fourteenth Amendments in arguing her Claim.  Brief in Support of Petition for Writ of Certiorari to the Alabama Court of Criminal Appeals, at 27, 28, 29, 31, 33.

*Walker's Traverse*, Court Document 13, at 18.

Walker's first and only presentation of her federal claim regarding intent came in her petition for writ of certiorari before the Alabama Supreme Court.  Because review by certiorari is discretionary with the Alabama Supreme Court,[4] "[r]aising the claim in such a fashion does not, for the relevant purpose, constitute "fair presentation."  *Castille v. Peoples*, 489 U.S. 346, 351(1989); *see also Mauk v. Lanier*, 484 F.3d 1352, 1358 (11th Cir. 2007).  Therefore, Walker did not fairly present her federal constitutional claim to the Alabama courts and has failed to exhaust her state remedies.  Because this claim was not "fairly presented" to the state court, and there no longer exists any remedial vehicle by which the state courts may consider the claim, the United States Supreme Court has held that it is procedurally defaulted.  *Teague v. Lane*, 489 U.S. 288 (1989).  Therefore, this claim is procedurally barred from review in this court.

---

[4] *See* Rule 39 of the Alabama Rules of Appellate Procedure.

If a petitioner has procedurally defaulted on a constitutional claim, he is barred from litigating that claim in a federal habeas corpus proceeding unless he can show adequate "cause" for and "actual prejudice" from the default. *Engle v. Isaac,* 456 U.S. 107 (1982); *Wainwright v. Sykes,* 433 U.S. 71 (1977). The "cause and prejudice" test of *Engle v. Isaac* and *Wainwright v. Syke*s is in the conjunctive. Therefore, the petitioner must prove both cause and prejudice to excuse a procedural default.

The United States Supreme Court summarized the "cause and prejudice" standard:

> In *Wainwright v. Sykes*, 433 U.S. 72 (1977), this Court adopted the "cause and prejudice" requirement of *Francis v. Henderson*, [425 U.S. 536 (1976)], for all petitioners seeking federal habeas relief on constitutional claims defaulted in state court. The *Sykes* Court did not elaborate upon this requirement, but rather left open "for resolution in future decisions the precise definition of the 'cause'-and-'prejudice' standard." 433 U.S. at 87, 53 L. Ed. 2d 594, 97 S. Ct. 2497. Although more recent decisions likewise have not attempted to establish conclusively the contours of the standard, they offer some helpful guidance on the question of cause. In *Reed v. Ross*, 468 U.S. 1, 82 L. Ed. 2d 1, 104 S. Ct. 2901 (1984), the Court explained that although a "tactical" or "intentional" decision to forgo a procedural opportunity normally cannot constitute cause, *id.,* at 13-14, 82 L. Ed. 2d 1, 104 S. Ct. 2901, "the failure of counsel to raise a constitutional issue reasonably unknown to him is one situation in which the [cause] requirement is met." *Id.,* at 14, 82 L. Ed. 2d 1, 104 S. Ct. 2901. The Court later elaborated upon *Ross* and stated that "the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). We explained that "a showing that the factual or legal basis for a claim was not reasonably available to counsel, . . . would constitute cause under this standard." *Ibid.*

*Amadeo v. Zant*, 486 U.S. 214, 221-22 (1988).

The petitioner must also demonstrate that he was prejudiced; he must show "not merely that the errors . . . created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting [the] entire trial with error of constitutional dimensions." (emphasis in

original).  *United States v. Frady*, 456 U.S. 152, 170  (1982).  A federal habeas court, however, will consider a procedurally defaulted claim in the absence of cause, if a "fundamental miscarriage of justice" has "probably resulted in the conviction of one who is actually innocent."  *Smith v. Murray*, 477 U.S. 527, 537-38 (1986) (*quoting, respectively, Engle*, 456 U.S. at 135, and *Murray,* 477 U.S. at 496).

Walker makes no argument that she has cause for or prejudice from her failure to present this claim as a federal constitutional claim on direct appeal.[5]  Rather, she argues only that the claims cannot be defaulted since she raised it in her certiorari petition and accompanying brief.  Because Walker has not met the appropriate standard to avoid the procedural bar, this claim is due to be dismissed.

## CLAIM 3

### There Was Gender Discrimination in the Selection of the Grand Jury Foreperson, in Violation of the Sixth and Fourteenth Amendments

Walker next claims that alleged gender discrimination in the selection of the foreman of the grand jury violated her Sixth and Fourteenth Amendment rights.

> The foreman of that grand jury was a man named James Truss.  CR99.  That foreman was chosen, as were all the forepersons at that time, by the circuit court judges of the county pursuant to wholly subjective criteria.  Supp. I, R1256-59.   In the 16 years prior to and including the May 1988 grand jury term, there were 37 forepersons.  Of these, 4, or 10.8%, were female.

*Petition* at 18.

---

[5]  Walker was represented on appeal by Ruth E. Friedman, who is also representing Walker in this case.

When Walker raised this claim prior to trial, the trial court, after conducting a lengthy hearing on the issue, stated that "the Court carefully considered that motion and does hereby dismiss or deny that motion."[6] *Supp. I*, R. 1339- 340.  Walker makes no argument that the trial court's decision was contrary to or an unreasonable application of Supreme Court precedent, or that the decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  Therefore, this claim is due to be dismissed.

## CLAIM 4

### The Indictment Was Fatally Tainted by the Fact That the Foreperson Gave Evidence Against Walker during the Grand Jury Proceedings

In support of this claim, Walker argues that:

Prior to trial, the defense filed a motion for access to the transcript of the grand jury proceedings by which Maxine Walker was indicted.  R1476. Among the few pages of material received by the defense was the following transcript excerpt:

MARGARET MORRISON:  Well, like I said just over the months it was back and forth she told me just a few days before [Berry's death] that that she had went to the doctor and she got a disease from him and, ah, I don't know it's just a lot.

DISTRICT ATTORNEY ROBERT RUMSEY:  (Inaudible)  you talking about syphilis?

A.  She never did tell me.  She said, "A bad infection."

Q.  Well, she told us syphilis.  And of course, Mr. Truss tells me that she's been checked over there in the jail and she doesn't have it.

---

[6] Although Walker raised this claim on direct appeal, the Alabama Court of Criminal Appeals found the claim to be procedurally barred and did not review it on the merits.  Alabama Court of Criminal Appeals' opinion on direct appeal, Exhibit D to Respondents' *Answer*, Court Document 9, at 36-38.  Thus, this court must look to the trial court's adjudication of the claim on the merits.

(In light of the evidence against Walker, it is not reasonable to believe that she would not have been indicted if the foreperson had not challenged the grand jury witness' hearsay statement that Walker had syphillis.)

> CR676-68 (citing Grand Jury Testimony of MARGARET
> MORRISON taken before the May 1988 Grand Jury on June 2, 1988,
> at 5) (emphasis added).

Defense counsel immediately filed a motion to quash the indictment based on this new information and brought the issue to the trial court's attention, seeking a hearing to determine, inter alia, what other information Mr. Truss might have been privy to. The prosecution objected and the trial court refused to even hold a hearing. R329-31.

James Truss should not have been a member much less the leader of the grand jury since he had personal knowledge about the facts of this case. His unsworn "testimony" could well have had great sway over the fellow grand jurors with whom he had been sitting regularly and making decisions for months. That testimony also received the imprimatur of the District Attorney when Mr. Rumsey asserted it as fact in his questioning of Mrs. Morrison.

Mr. Truss's word was set against that of the defendant — who asserted she had been suffering from a venereal disease given to her by the victim — and that of grand jury witness Margaret Morrison. This not only left the defendant looking like a liar in the eyes of the grand jurors, but also wholly undermined the credibility of Mrs. Morrison whose other testimony was crucial. This witness told the grand jurors that Berry had been threatening to kill Mrs. Walker, that she'd had to have her phone number changed due to his harassment, and that he would not let her end their relationship. Mrs. Morrison also testified about the careless attitude of Charles Lawhorn, the man who shot and killed W.C. Berry. All of this was important information for the jury to weigh in deciding what if any charge to bring.

It is impossible to know what other information Mr. Truss may have brought to the district attorney as he sought to indict or to the other grand jurors as they deliberated. He knew both that Mrs. Walker had been examined at the jail and what the results of that medical examination were. With access such as this to intimate information about the defendant, Mr. Truss should not also have been in charge of the body that would decide whether to charge her with a capital murder or a lesser offense.

*Petition* at 25-27.

When Walker raised this claim prior to trial, the trial court denied the claim on the merits, without holding a hearing.[7]  R. 329-31.  Walker makes no argument that the trial court's decision was contrary to or an unreasonable application of Supreme Court precedent, or that the decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  Therefore, this claim is due to be dismissed.

## CLAIM 5

### The Trial Court Tampered with Evidence in a Manner
### Prejudicial to the Truth and to Walker's Right to a Fair Trial

Walker next claims that the trial court redacted a sentence from her statement in violation of her Sixth and Fourteenth Amendment rights to present a defense and to confront the evidence against her.  When she raised this claim on direct appeal, the Alabama Court of Criminal Appeals found that the claim was without merit:

> We note that Defendant's Exhibit 17 are [sic] the notes that Ann Wallace Surrett took during an April 2, 1988, interview conducted prior to Walker's April 2, 1988, recorded statement.  Although Walker's counsel was allowed to question Surrett about these notes, Walker's counsel was not allowed to ask Surrett in the presence of the jury any questions regarding the statement "Said gonna kill me and drown me like he did that other woman," which was contained in Defendant's Exhibit 17. (Defendant's Exhibit 17, C. 1836.)  In fact, we note that the parties stipulated "pursuant to the Court's ruling" that this particular statement would be blacked out and the exhibit remarked ast Defendant's Exhibit 21.  (R. 1173, 1178.)

> In connection with this issue, Walker also contends that the trial court abused its discretion when it would not allow Walker's counsel to question Dusty Zook, who worked for the Sylacauga Police Department in 1988, in the presence of the jury

---

[7]  Although Walker raised this claim on direct appeal, the Alabama Court of Criminal Appeals found the claim to be procedurally barred and did not review it on the merits.  Alabama Court of Criminal Appeals' opinion on direct appeal, Exhibit D to Respondents' *Answer*, Court Document 9, at 38.  Thus, this court must look to the trial court's ruling on the merits of the claim.

regarding her notes concerning a statement she overheard Walker make on April 3, 1988 - - "He's already killed other women.  I knew he'd do it to me."  (Defendant's Exhibit 8, C. 1729, R. 826.)

Walker argues that this evidence was crucial to show that she had a legitimate reason to fear Berry's threats that he would kill her and that she acted as she did on March 31, 1988, because she wanted to get away from Berry, who previously had been convicted of killing another woman.  FN.

> FN.  Defendant's Exhibit 18 shows that in 1976 Berry was indicted for "unlawfully and with malice aforethought kill[ing] Lillie Mae Taylor by drowning her but without premeditation or deliberation."  Berry was convicted of manslaughter in the first degree and sentenced to 6 years' imprisonment.  This evidence was not presented to the jury.

Our review of the record reveals the following: Prior to trial, the State filed a motion in limine, requesting that the trial court exclude evidence of "alleged past violent actions of the victim, W. C. Berry, until such time as defense has injected a claim of self-defense and presented some evidence as to that claim."  (C. 704.)  In this motion, the State further stated:

> The State contends that even in the light most favorable to [Walker], the defense will never be able to meet all the required elements of self-defense.  If this is, in fact, the case, the evidence of the victim's character would be irrelevant.  It is conceivable that the defense could put the victim's character at issue before making a showing of self defense, and then never be able to meet the requirement of self-defense.  At that time, the jury would have heard evidence that is irrelevant and prejudicial to the State and the victim is unavailable to rebut his character, reputation or prior acts.  If this Court were to rule, at the end of the trial, after hearing the evidence, that there is no legitimate claim of self-defense, the bad character of the victim would be irrelevant, misleading and confusing to the jury and prejudicial to the State.  For this reason, the State moves that this evidence not be admitted until such time as it becomes relevant by a showing of self-defense.  Perry v. State, 647 So. 2d 71 (Ala. Crim. App. 1994).

(C. 706, 709.)  After a hearing, the trial court issued an order granting the State's motion "as to violent acts of victim until such time as such evidence becomes legally relevant to the issues of this case."  (C. 742.)

17

After the State rested, Walker's counsel advised the trial court that its first two witnesses would be Ann Wallace Surrett and Dusty Zook and that counsel intended to question these witnesses about statements Walker made concerning allegations that Berry had previously killed another woman. Walker argued at trial that this evidence was relevant to show the reason that Walker acted in self defense - - she feared Berry because he had threatened her and she took Berry's threats seriously because she was aware that Berry had killed before. As the State argued at trial, the basis for Walker's fear of Berry was not relevant in this case because "fear alone does not get you to self defense. You can't just be in fear of somebody and then be justified when you kill them" (R. 823), especially when the facts of the case show that Walker lured an unarmed Berry out to an isolated area where her nephews were unarmed and waiting. The State further asserted the following:

> We don't object to Ann Surrett's testimony as to the rule of completeness. We don't have any problem with her coming in and testifying about her notes that were not made part of the recorded statement, but we do have [an objection to] . . . that one thing dealing with Mr. Berry's prior conviction.

(R. 825.) The trial court sustained the State's objection.

In *Allison v. City of Birmingham*, 580 So. 2d 1377, 1387 (Ala. Crim. App. 1991), this Court stated:

> While the general rule is that "[w]hen one party puts into evidence part of a conversation, document, or transaction, the opposing party is entitled to introduce the whole of it." *Pyles v. State*, 448 So. 2d 416, 420 (Ala. Crim. App. 1983). However, this rule "is subject to an important qualification; i.e., those parts of the previously introduced conversation [,document, or transaction] relating to entirely separate and independent subjects, or to matters not relevant to the issues on trial, may not be brought out." *R. C. Bottling Co. v. Sorrells*, 290 Ala. 187, 189, 275 So. 2d 131 (1973).

As this Court previously determined in Part I, Walker was not entitled to present a claim of self defense under the facts of this case. Thus, any evidence concerning the reasons Walker feared Berry and acted as she did on March 31, 1988, was not relevant to any issue presented at trial. Consequently, we find no error here.

Alabama Court of Criminal Appeals' opinion on direct appeal, Exhibit D to Respondents' *Answer*,

Court Document 9, at 27 - 30.

18

Walker contends that *Washington v. Texas*, 388 U.S. 14, 19 (1967) establishes her right to present evidence to a trier or fact, and that the state court's decision is an "unreasonable application" of the law. Although *Washington* does state in general terms, that a defendant has the right to present a defense, Walker must identify a Supreme Court case addressing a situation similar to hers.[8] *See Callahan v. Campbell*, 427 F.3d 897, 930 (11th Cir. 2005). Walker has not identified a Supreme Court case with an issue similar to hers. Walker provides no support, Supreme Court or otherwise, for the proposition that the Fifth, Sixth, or Fourteenth Amendment gave her a right, considering the circumstances of the murder, to introduce evidence relating to her claim of self-defense and the victim's character. Accordingly, the state court's decision on this issue was not contrary to or an unreasonable application of Supreme Court precedent. This claim is due to be dismissed.


### CLAIM 6

### The Prosecution Introduced Statements Taken from Walker
### In Violation of Her Fifth, Sixth, and Fourteenth Amendment Rights

In support of the current claim, Walker alleges that:

> The Talladega and Sylacauga authorities extracted several statements from Mrs. Walker which became the centerpiece of the case against her. These statements were admitted despite the fact that Walker asked for a lawyer and was not given one; that her intellectual abilities are such that she did not knowingly and intelligently waive her rights after a lawyer was denied her; and that she was in a state of trauma after the relentless abuse she had suffered.

*Petition* at 31.

---

[8] The Court in *Washington* found that "the petitioner in this case was denied his right to have compulsory process for obtaining witnesses in his favor because the State arbitrarily denied him the right to put on the stand a witness who was physically and mentally capable of testifying to events that he had personally observed, and whose testimony would have been relevant and material to the defense." *Id*. at 23.

When Walker raised this claim on direct appeal, the Alabama Court of Criminal Appeals found the claim to be without merit:

> As previously noted, after Berry's body was discovered on April 2, 1988, Walker voluntarily came to the sheriff's office in Sylacauga. After Investigator Wallis advised Walker of her *Miranda* rights, she indicated that she understood those rights, executed a waiver of those rights, answered Investigator Wallis's questions, and gave a recorded statement, outlining the events of March 31, 1988. On April 3, 1988, Investigator Wallis learned he needed to do some additional investigation because the autopsy had shown that two weapons were involved and Walker had only mentioned a shotgun in her April 2, 1988, statement. When Investigator Wallis spoke with Walker on April 3, 1988, she said, "Before I say anymore [sic], I'd like to have a lawyer present." (Defendant's Exhibit 1, April 2, 2002 hearing.) Investigator Wallis testified that all questioning of Walker ceased at that point.

> On April 5, 1988, Walker requested to speak with Lt. Kidd of the Sylacauga Police Department. When Lt. Kidd met with Walker, she told him that she wanted to speak to him about the case. Lt. Kidd told Walker that he was not assigned to the case and that she would need to speak with either Investigator Wallis from the sheriff's department or someone from the district attorney's office about the case. After Walker indicated that she would speak with someone from the sheriff's department, Lt. Kidd contacted Investigator Wallis and escorted Walker to the sheriff's office. Investigator Wallis, once again, read Walker her *Miranda* rights and she executed the form waiving those rights. Thereafter, Walker gave a recorded statement that differed from her April 2, 1988, statement.

> As Walker points out, in *State v. McDevitt*, 484 So. 2d 543, 548 (Ala. Crim. App. 1985), this Court stated:

>> [W]hether a waiver of counsel is knowing and intelligent depends upon the particular underlying facts and circumstances surrounding each case, including the background, experience, and conduct of the accused . . . .

> In other words, "whether a waiver [of counsel] is knowing and intelligent depends . . . the totality of the circumstances." Click v. State, 695 So. 2d 209, 218 (Ala. Crim. App. 1996).

> Walker argues that she could not have voluntarily, knowingly, and intelligently waived her *Miranda* rights because, she says, she has "very limited intelligence" and did not understand her rights. (Walker's brief at p. 48.) Dr. Katherine Boyer, a forensic and clinical psychologist who evaluated Walker in 2001

and 2002, testified at the suppression hearing and at trial that the battery of tests she administered to Walker indicated that Walker had some significant problems in understanding some aspects of her *Miranda* rights.  At the suppression hearing, Dr. Boyer stated:

> [Walker's counsel]:  You've testified that she had significant problems understanding *Miranda*.  Did that mean she did or didn't understand those warnings?  Can you testify to that?
>
> [Dr. Boyer]:  No, I don't have an opinion about that.  I feel that my role is to describe as best I can the problems that she has currently to look at whether these current problems were likely to have been present at that time.  I think based on, you know, my entire assessment I have serious questions.  I think there is some significant problems with what she understood at the time, but whether, you know, she actually did or did not - - whatever the legal threshold is I would not have an opinion about that.

(R. 100-01.)

. . .

As previously noted, Walker understood her Miranda rights well enough to tell authorities on April 3, 1988, that "[b]efore [she said] anymore [sic], [she]'d like to have a lawyer present." (Defendant's Exhibit 1, April 2, 2002 hearing.)  Dr. Boyer admitted at the suppression hearing that this showed that Walker "did at least understand that she could have an attorney."  (R. 105.)

The authorities did not question Walker again until April 5, 1988, when she requested to speak to them about her case.  Dr. Boyer admitted that Walker's act of requesting to speak with the authorities after invoking her right to counsel was "clearly a voluntary act" and that "[n]obody made her go and do that," but that Dr. Boyer was unsure of Walker's motivation for this action.  (R. 113.)  Dr. Boyer testified that she could not say whether Walker's decision to speak with the authorities on April 5, 1988, was because she did not understand her *Miranda* rights; whether it was "something [Walker] decided to do on her own out of a feeling of guilt;" or whether Walker's decision was motivated by a desire "to possibly minimize her position as opposed to the other co-defendants who might give statements before her" - - that "she thought that [it] would be better for her to come forward now as opposed to later."  (R. 114.)

> "[A]n accused . . . having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by

21

the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." *Edwards v. Arizona*, 451 U.S. 477, 484-85, 101 S. Ct. 1880, 1885, 68 L. Ed. 2d 378 (1981).  *In Smith v. Illinois*, 469 U.S. 91, 105 S. Ct. 490, 83 L. Ed. 2d 488 (1984), the United States Supreme Court followed this line of reasoning, holding that, "if the accused invoked his right to counsel, courts may admit his responses to further questioning only on finding that he (a) initiated further discussions with the police, and (b) knowingly and intelligently waived the right he had invoked."  *Smith v. Illinois*, 469 U.S. at 95, 105 S. Ct. at 492-93.  *See also Wyrick v. Fields*, 459 U.S. 42, 46, 103 S. Ct. 394, 395, 74 L. Ed. 2d 214 (1982); *Hamilton v. State*, 492 So.2d 331 (Ala. Cr. App. 1986).

> [B]ut even if the conversation taking place after the accused has 'expressed his desire to deal with the police only through counsel,' is initiated by the accused, where reinterrogation follows, the burden remains upon the prosecution to show that subsequent events indicated a waiver of the Fifth Amendment right to have counsel present during the interrogation.

*Oregon v. Bradshaw*, 462 U.S. 1039, 1044, 103 S. Ct. 2830, 2834, 77 L. Ed. 2d 405 (1983).

> From the record, it is apparent that after he had invoked his right to counsel in a prior custodial interrogation, the appellant requested to speak with Investigator Hayes.  This court has held that, "[A] defendant's knowledge of or his assertion of his right to counsel may, under the totality of the circumstances, strongly evidence the fact that he knowingly waived counsel at a subsequent time." *Johnson v. State*, 378 So.2d 1164, 1168 (Ala. Cr. App.), *cert. quashed*, 378 So.2d 1173 (Ala. 1979).  *See also Thompson v. State*, 347 So.2d 1371 (Ala. Cr. App.), cert. denied, 347 So.2d 1377 (Ala.1977), *cert. denied*, 434 U.S. 1018, 98 S. Ct. 740, 54 L. Ed. 2d 765 (1978).

*Holliday v. State*, 641 So. 2d 325, 328 (Ala. Crim. App. 1994), (emphasis added).

Walker also contends that her waiver of her Miranda rights was invalid because, she says, the evidence shows that she was a battered woman who had been subjected to an escalation of violence in the days just prior to when she was arrested

and interrogated and that, given her history as a battered woman, she would tend not to trust her ability to make decisions and she would tend to be compliant with requests made by authority figures because she would likely fear the consequences of non-compliance.

Although there was evidence that Walker had limited intelligence and that she was a battered woman, there was ample evidence from which the trial court could conclude that Walker's waiver of her *Miranda* rights was knowingly, intelligently, and voluntarily made.  There was evidence that Walker was actively involved in planning Berry's murder - - she picked the location, she provided the weapons, and she took her armed nephews to the location before she found Berry and lured him to the spot; she drove the truck in the direction that Berry had run so that her nephews would have an opportunity to shoot Berry; in her initial statement, she told the authorities a version of the events that tended to minimize her culpability and involvement in Berry's death; when the authorities had additional questions concerning the events of March 31, 1988, Walker asserted her right to counsel; and then she initiated further discussion with the authorities concerning the case and, once again, waived her *Miranda* rights before giving another statement.  Thus, under the totality of the circumstances, we find that the trial court did not err when it determined that Walker knowingly, intelligently, and voluntarily waived her *Miranda* rights and that her statements were admissible.

Alabama Court of Criminal Appeals' opinion on direct appeal, Exhibit D to Respondents' *Answer*,

Court Document 9, at 30 - 36.

Walker maintains that this opinion is "contrary to law and represents an unreasonable application of the law to the particular facts of this case," because:

In its opinion denying relief, the Alabama Court of Criminal Appeals examined each factor separately.  It failed to consider the cumulative effect of all of the elements – Mrs. Walker's limited intelligence, her isolation, the trauma she was suffering – on both her waiver of *Miranda* rights and the voluntariness of her statements.  It also rigidly applied the controlling precedents, finding for example that because Mrs. Walker asked for a lawyer she must have had the wherewithal to validly waive her rights.

*Petition* at 34.

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) are separate bases for reviewing a state court's decisions. *Putman v. Head*, 268 F.3d 1223, 1241 (11th Cir. 2001)(*citing Williams v. Taylor*, 529 U.S. 362, 404-05 (2000)).

> A state court decision is "contrary to" clearly established federal law if either (1) the state court applied a rule that contradicts the governing law set forth by Supreme Court case law, or (2) when faced with materially indistinguishable facts, the state court arrived at a result different from that reached in a Supreme Court case. *See Bottoson v. Moore*, 234 F.3d 526, 531 (11th Cir. 2000).
>
> A state court conducts an "unreasonable application" of clearly established federal law if it identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case. *See id.* An unreasonable application may also occur if a state court unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context. *See id.* Notably, an "unreasonable application" is an "objectively unreasonable" application. *See Williams*, 529 U.S. at 412, 120 S. Ct. at 1523.

*Putman v. Head*, 268 F.3d 1223, 1241 (11th Cir. 2001)(footnote omitted).

The totality of the circumstances in Walker's case indicates that Walker was actively involved in planning Berry's murder - - she picked the location, she provided the weapons, and she took her armed nephews to the location before she found Berry and lured him to the spot, she drove the truck in the direction that Berry had run so that her nephews would have an opportunity to shoot Berry; after Berry's body was discovered on April 2, 1988, Walker voluntarily went to the sheriff's office in Sylacauga. After being advised of her *Miranda* rights, she indicated that she understood those rights, executed a waiver of those rights, then answered the investigator's questions, and gave a recorded statement, outlining the events surrounding Berry's murder, and tending to minimize her culpability and involvement in Berry's murder; the next day, on April 3, 1988, after the autopsy revealed that Berry had been shot with two different guns, the investigator approached Walker to

obtain additional information; however, on this occasion, Walker requested to have a lawyer present before she gave further information; the investigator did not pursue questioning Walker that day; on April 5, 1988, Walker herself requested to speak with someone about the case; the investigator once again read Walker her *Miranda* rights and Walker executed a form waiving those rights; Walker then gave a recorded statement that differed from her April 2, 1988 statement.

Walker has not shown that the Alabama Court of Criminal Appeals' decision applied a rule in contradiction to governing Supreme Court case law, or that when faced with materially indistinguishable facts, the Alabama Court of Criminal Appeals arrived at a result different from that reached in a Supreme Court case. Nor has she shown that the Alabama Court of Criminal Appeals unreasonably applied Supreme Court law to the facts of her case or that the state court unreasonably extended or declined to extend a legal principle form Supreme Court case law to a new context. Accordingly, Walker has failed to establish that the Alabama Court of Criminal Appeals' determination that Walker knowingly, intelligently, and voluntarily waived her *Miranda* rights before voluntarily making her statements, and that her statements were admissible was neither "contrary to," nor "an unreasonable application" of, United States Supreme Court precedent. This claim is due to be dismissed.

**Claim 7**

**The Jury Instructions Were Fatally Flawed in a Number of Ways, in Violation of Walker's Sixth and Fourteenth Amendment Rights**

25

Walker next claims that the "jury instructions were fatally flawed in a number of ways."

*Petition* at 34.  Specifically, she claims that:

> The trial court rejected every proffered charge on the effects of battering, including those relevant to both mens rea and self defense.  Every self defense charge was refused.  The trial court also refused Walker's requests for charges on transferred intent and dismissed her objections to the reasonable doubt charge.
>
> Mrs. Walker raised every one of these issues in writing to the trial court. They were discussed and debated in detail at the charge conference, and the trial court ruled on each one. R1120-1156; *see also* R1297, CR569-85, 624.   Yet the Alabama Court of Criminal Appeals again levied an improper default, contending that trial counsel should have formalistically reasserted their objections after the charge was actually given. *Walker v. State*, slip op. at 54-55.

*Id*. at 34-35.

When Walker raised this claim on direct appeal, the Alabama Court of Criminal Appeals found the claim to be procedurally barred.

Walker failed to properly preserve these issues for our review.

> Rule 21.3, Ala. R. Crim. P., states:
>
> > No party may assign as error the court's giving or failing to give a written instruction, or the giving of an erroneous, misleading, incomplete, or otherwise improper oral charge, unless the party objects thereto before the jury retires to consider its verdict, stating the matter to which he or she objects and the grounds of the objection.  Opportunity shall be given to make the objection out of the hearing of the jury.
>
> At the conclusion of the jury charge, the following took place:
>
> > The Court: What says the defendant?
> >
> > [Walker's Counsel]: Sorry, Judge, I need to approach.
> >
> > The Court: All right.  Come on up.

[Walker's Counsel]: Judge, when you read the voluntariness [charge], the word disregard came out as regard.

The Court: Okay. I don't remember it that way, but I don't want to leave that hanging.

The Court: What does the court reporter have in that regard?

The Court Reporter: I heard regard. I remember thinking that it seemed odd.

The Court: All right. Let me go back. I appreciate you bringing that to my attention. Is that the only thing?

. . .

[Walker's Counsel]: (Inaudible discussion out of the presence of the jury.)

The Court: What now?

[Walker's Counsel]: The standard objections, Your Honor, if you say that the jury can disregard testimony - - totally that is one error in the case and suggests that's error - - (inaudible).

The Court: What do you think?

[Prosecutor]: Is that the black-letter law?

[Walker's Counsel]: And we just object to the definition of reasonable doubt.

The Court: All right. Overruled except for that one matter. Let me, ladies and gentlemen, clear up one thing I may have misstated when I was talking to you about the voluntariness issue relative to statements I gave you - - I want to give you a clarification on that particular issue. And that words that I meant to say are as follows: However, if you determine that these statements were not voluntary, you must disregard it totally.
Now, is that satisfactory?

[Walker's Counsel]: Satisfied, Judge. Thank you.

(R. 1301 - 03.)  The only two discernable objections to the jury charge were (1) that the trial court stated "regard" instead of disregard in the voluntariness charge and (2) that the definition of reasonable doubt was incorrect.  Thus, those are the only two grounds arguable preserved for appellate review.

As noted above, the trial court corrected its misstatement in the voluntariness charge.  The only other objection was a underlined general objection to the definition of reasonable doubt.  In *Hardeman v. State*, 651 So. 2d 59, 63 (Ala. Crim. App. 1994), this Court stated:

> Under Rule 14, A.R.Cr.P.Temp. (now Rule 21.2, A.R.Cr.P.), to preserve alleged error in the refusal of requested charges, a defendant must not only object in a timely manner, he must 'state with particularity the grounds of [his] objection.' *Matkins v. State*, 497 So. 2d 201, 203 (Ala.1986) (emphasis omitted).  An objection which merely asserts that refused charges are correct or accurate statements of law does not meet this requirement. *Connolly v. State*, 539 So. 2d 436, 438 (Ala. Cr. App. 1988); *Bogan v. State*, 529 So. 2d 1029, 1031 (Ala. Cr. App. 1988). *Cf. Ex parte Washington*, 448 So. 2d 404, 406 (Ala. 1984) (in order to preserve alleged error in the trial court's oral charge, an 'objection must be specific enough to point out the alleged error so as to allow the judge to correct [that] error'); *Petite v. State*, 520 So.2d 207, 213 (Ala. Cr. App. 1987) (same).

*Jones v. State*, 591 So.2d 569, 573 (Ala. Cr. App. 1991).

As previous[ly] noted, Walker stated that she "just object[ed] to the definition of reasonable doubt" and gave no other details to support her objection.  (R. 1303.)  Thus, Walker's general objection to the definition of reasonable doubt was insufficient to preserve this issue for appellate review.

Alabama Court of Criminal Appeals' opinion on direct appeal, Exhibit D to Respondents' *Answer*,

Court Document 9, at 54 - 57.

As previously discussed, if a claim has been previously presented in some form to a state

court, a federal habeas court may refuse to hear that claim only if the last state court rendering the

judgment "clearly and expressly" stated that its judgment was based on procedural bar. *Harris v. Reed*, 489 U.S. 255, 263 (1989). In its opinion, the Alabama Court of Criminal Appeals, the last state court to address this claim, clearly and specifically held that the claim was procedurally barred. The court concludes that it is clear from the record that the last state court to review the petitioner's claim "clearly and expressly" stated that its judgments rested on procedural bars, which were independent and adequate under state law. *See Whiddon v. Dugger*, 894 F.2d 1266 (11th Cir. 1990). Therefore, the claim is procedurally barred.

Walker makes no attempt to establish cause and prejudice to excuse her procedural default. Rather, she argues that it would be "inappropriate" for the court to find that this claim is defaulted.

> There can be no doubt that both the State of Alabama and the trial court knew exactly which charges Mrs. Walker wished given and why, and also knew the basis of her objections to the charges to be given. Imposing a procedural default under such circumstances elevates form over substance and frustrates the exercise and vindication of federal constitutional rights. *Lee v. Kemna*, 534 U.S. 362 (2002) (rejecting state findings of default where defendant made his objections clears and all parties were on notice).

*Petition* at 35. She adds that:

> Petitioner concedes that her post-charge objections were limited to statements the trial court made that were different from what it had intended or that had not been previously brought to the court's attention. But that was because there had been a full charge conference, with written requested instructions, at which the issues were thoroughly aired. R1120-1156. There can be no suggestion that either the trial court or the state was unaware of Mrs. Walker's objections.

*Walker's Traverse*, court document 13 at 36. This argument is without merit.

In *Lee*, the Court held that the Missouri rules requiring that continuance motions be written and accompanied by an affidavit, and setting forth showings movant must make for continuance grounded on absence of witnesses, did not constitute a state ground adequate to bar federal habeas

review of petitioner's claim that he was deprived of due process by denial of continuance.  *Lee v. Kemna*, 534 U.S. 362 (2002).

> Ordinarily, violation of "firmly established and regularly followed" state rules-for example, those involved in this case-will be adequate to foreclose review of a federal claim.  *James v. Kentucky*, 466 U.S. 341, 348, 104 S. Ct. 1830, 80 L. Ed. 2d 346 (1984); *see Ford v. Georgia*, 498 U.S. 411, 422-424, 111 S. Ct. 850, 112 L. Ed. 2d 935 (1991).  There are, however, exceptional cases in which exorbitant application of a generally sound rule renders the state ground inadequate to stop consideration of a federal question.  *See Davis v. Wechsler*, 263 U.S. 22, 24, 44 S. Ct. 13, 68 L. Ed. 143 (1923) (Holmes, J.) ("Whatever springes the State may set for those who are endeavoring to assert rights that the State confers, the assertion of federal rights, when plainly and reasonably made, is not to be defeated under the name of local practice.").

*Id*. at 376.  The holding "followed from 'the general principle that an objection which is ample and timely to bring the alleged federal error to the attention of the trial court and enable it to take appropriate corrective action is sufficient to serve legitimate state interests, and therefore sufficient to preserve the claim for review here.'"  *Osborne v. Ohio*, 495 U.S. 103, 125 (1990).  "This general principle, and the unusual 'sequence of events' before [the court in *Lee*]-rapidly unfolding events that Lee and his counsel could not have foreseen, and for which they were not at all responsible-similarly guide our judgment in this case."  *Lee*, 534 U.S. at 379.

Walker does not argue that Rule 21.3 of the Alabama Rules of Criminal Procedure does not constitute a state ground adequate to bar federal habeas review of her claim that the jury instructions were fatally flawed.  Rather, she bases her argument on the assertion that neither the trial court, nor the state, could have been unaware of her objections to the jury charges, "because there had been a full charge conference, with written requested instructions, at which the issues were thoroughly aired."  *Walker's Traverse*, court document 13 at 36.

Regardless of whether the court and the state were aware of Walker's objections to the jury charges at the charge conference, Rule 21.3 requires that specific objections be made after the jury is charged.  Prior to the charge actually being given, any "objections" would be speculative. Moreover, Walker was specifically instructed by the trial court that she would be expected to make any objections to the jury charges after the charges were given to the jury:

> **Mr. Stafford Smith:**   Your Honor, the only thing that makes me uncomfortable about that is I'm not [sure] whether I'm meant to object to the charge before or after it's given.

> **The Court**:  What you do, you object to it after I give it to the jury.  You come up here and say I object to certain aspects of your charge, and we set them out into the record.

> **Mr. Stafford Smith**:  As long as I can do that.

> **The Court**:  Yeah, you have the opportunity to do that.

R. 1141.  When offered the opportunity to make her objections to the jury charges, Walker only objected to the charge on reasonable doubt and the judge's use of the word "regard" instead of "disregard."  There was no good reason for Walker's failure to object to the court's failure to give her requested instructions at the appropriate point during the trial, as required by the Alabama Rules of Criminal Procedure.

Walker has failed to establish cause for or prejudice from the default of her jury instruction claim.  Therefore, the claim is due to be dismissed.

## CLAIM 8

### The Prosecutor Committed Prejudicial Misconduct
### By Commenting on the Very Evidence Walker Was Not Permitted to Present

In support of her final claim, Walker claims that the prosecutor was allowed to present evidence and comment on evidence she was not allowed to present.  First, Walker argues that although she was not allowed to present evidence that she was a battered woman who lived in constant fear of the victim, to support self-defense, during its cross-examination of Emily Anne Kelly, the defense's expert on battered women's syndrome, the prosecution was allowed to make reference to it.  Specifically, Walker claims that the prosecution:

> asked the expert on domestic violence if it was "inconsistent" for someone suffering from battering and its effects to "enlist the help from someone else to kill the person who's supposedly battering her." R1071.  He then asked Ms. Kelly if she had ever counseled anyone "accused of hiring someone to kill her batterer," R1072; *see also* 1273 (making same point for jury in argument), even though Kelly could not testify about the implications of battering precisely because of the state's contention that this was a "murder for hire."  *See, e.g.*, Motion in Limine as to Battered Women's Syndrome, CR700, and Motion in Limine as to Violent Acts of Victim, CR704.  The state should not have been allowed to "rebut" and comment on evidence that it specifically kept the defense from presenting.
>
> The prosecutor challenged Ms. Kelly's professional assessment that Mrs. Walker's statements about the abuse were true.  R1091.  He did this even as he successfully excluded all reference to the corroborating fact that Berry was convicted of the homicide Mrs. Walker feared as well as to Berry's repeated abuse of other women.  R1020, CR1840.  *See also* 1273 (prosecutor complains to jury that "[s]he was going to be a battered woman no matter what I said.")  The jury was thus left with the impression that Maxine Walker might be lying when there was plenty of evidence available – evidence the state managed to keep from them – in support.

*Petition* at 36-38.

When Walker raised this claim on direct appeal, the Alabama Court of Criminal Appeals found the claim to be procedurally barred.

> Initially, we note that Walker did not object to any of these remarks that she now contends constitute prosecutorial misconduct.  In *Felder v. State*, 697 So. 2d 490, 494 (Ala. Crim. App. 1996), this Court stated:
>
>> The appellant did not object to the state's question . . . .  "A proper objection must be made after the question calling for

objectionable testimony is asked and before the witness answers." [*Ex parte*] *Crymes,* 630 So. 2d [125], 127 [(Ala. 1993)]. "An issue that was not timely raised at trial will not be considered on appeal. Even constitutional issues must first be correctly raised in the trial court before they will be considered in appeal." *Hansen v. State*, 598 So. 2d 1, 2 (Ala. Crim. App. 1991). (Citations omitted.)

However, even if this issue had been preserved for our review, Walker would not be entitled to any relief. . . .

Alabama Court of Criminal Appeals' opinion on direct appeal, Exhibit D to Respondents' *Answer*, Court Document 9, at 47.

As previously discussed, if a claim has been previously presented in some form to a state court, a federal habeas court may refuse to hear that claim only if the last state court rendering the judgment "clearly and expressly" stated that its judgment was based on procedural bar. *Harris v. Reed*, 489 U.S. 255, 263 (1989). In its opinion, the Alabama Court of Criminal Appeals, the last state court to address this claim, clearly and specifically held that the claim was procedurally barred. The court concludes that it is clear from the record that the last state court to review the petitioner's claim "clearly and expressly" stated that its judgments rested on procedural bars, which were independent and adequate under state law. *See Whiddon v. Dugger*, 894 F.2d 1266 (11th Cir. 1990). Therefore, the claim is procedurally barred.

Walker makes no attempt to establish cause and prejudice to excuse her procedural default. Rather, she states only that "the state court found only one aspect of this claim defaulted and addressed all of it in any event on its merits." *Walker's Traverse*, court document 13 at 62. However, if the state court addresses both the procedural default and the merits of a claim in the alternative, a federal court should apply the state procedural bar and decline to reach the merits of the claim. *Alderman v. Zant*, 22 F.3d 1541, 1549-50 (11th Cir. 1994). The state court clearly held

that the claim was procedurally defaulted before addressing the merits of the claim in the alternative. Therefore, it is procedurally barred from review in this court. This claim is due to be dismissed.

Walker also claims that during its closing argument, the prosecution improperly commented on evidence that she was not allowed to present. Specifically, she alleges that:

> The prosecution also repeatedly misstated facts and mischaracterized evidence about the case, including with regard to Mrs. Walker's low intelligence; the fact that she tried to get help from the police; and Berry's stalking of petitioner. *See, e.g.*, R 1271, 873, 297, 302, 1269, 1277, 480, 556.

*Petition* at 38. When Walker raised this claim on appeal, the Alabama Court of Criminal Appeals found the claim to be without merit:

> We have reviewed the record and find no basis for reversal on this issue because all of these statements that Walker contends were falsehoods were either proper comments on the evidence or reply-in-kind to arguments that Walker had made in her closing argument.

Alabama Court of Criminal Appeals' opinion on direct appeal, Exhibit D to Respondents' *Answer*, Court Document 9, at 54.

Walker has not shown that the Alabama Court of Criminal Appeals' decision applied a rule in contradiction to governing Supreme Court case law, or that when faced with materially indistinguishable facts, the Alabama Court of Criminal Appeals arrived at a result different from that reached in a Supreme Court case. Nor has she shown that the Alabama Court of Criminal Appeals unreasonably applied Supreme Court law to the facts of her case or that the state court unreasonably extended or declined to extend a legal principle form Supreme Court case law to a new context. Accordingly, Walker has failed to establish that the Alabama Court of Criminal Appeals' determination that all of the statements that Walker contends were falsehoods were either proper comments on the evidence or reply-in-kind to arguments that Walker had made in her closing

34

argument was neither "contrary to," nor "an unreasonable application" of, United States Supreme Court precedent.  This claim is due to be dismissed.

Accordingly, the respondents' motion for summary judgment is due to be granted, and the petition is due to be dismissed.

An appropriate order will be entered.

Done this 17th day of March 2009.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
153671

35